```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
NANCY E. SOTACK,

                              Plaintiff,        07-CV-0382

            v.                                  **DECISION**
                                                **and ORDER**
MICHAEL J. ASTRUE, Commissioner
of Social Security

                              Defendant.
_____
```

## Introduction

Plaintiff Nancy E. Sotack ("Plaintiff") brings this action pursuant to the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c), seeking review of the final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits.[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") Alfred J. Costanzo, denying her application for benefits was against the weight of substantial evidence contained in the record and contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Rule 12(c), on the grounds that ALJ Kelly's decision was supported by substantial evidence contained in the record and was based on the correct application of appropriate legal standards. Plaintiff cross-moves for judgment on the pleadings pursuant to

---

[1]This case was transferred to the undersigned by the Honorable John T. Curtin, Judge, United States District Court for the Western District of New York by Order dated September 28, 2009.

Rule 12(c), seeking reversal of the Commissioner's ruling or, in the alternative, remand of the matter for a new hearing. For the reasons set forth below, I hereby deny the Commissioner's motion for judgment on the pleadings, grant Plaintiff's motion for judgment on the pleadings, and remand this claim to the Commissioner for further proceedings consistent with this decision.

## **Background**

On April 18, 2003, Plaintiff, who was then 30 years old, filed an application for Disability Insurance Benefits under Title II, §§ 216(i) and 223 of the Social Security Act ("the Act"). Plaintiff claimed a disability since August 31, 2002, due to deep vein thrombosis ("DVT"), sleep apnea, a weak heart muscle and leg pain. (Transcript of the Administrative Proceedings at pages 30, 43) (hereinafter "Tr."). Plaintiff's application was denied by the Social Security Administration ("the Administration") initially on July 18, 2003. (Tr. at 24). Plaintiff filed a timely request for an administrative hearing on August 20, 2003. (Tr. at 28).

Thereafter, Plaintiff appeared with counsel, at an administrative oral hearing before ALJ Alfred J. Costanzo on November 15, 2004. (Tr. at 272). In a decision dated January 24, 2005, the ALJ determined that Plaintiff was not entitled to disability benefits. (Tr. at 14). The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied Plaintiff's request for review on May 3, 2007 after

considering additional information. (Tr. at 7). On May 21, 2007, Plaintiff filed this action.

## **Discussion**

### I. **Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Monqeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the

pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

## II. **The Five-Step Sequential Evaluation Process.**

The Act defines disability as "physical or mental impairment or impairments [. . .] of such severity that [claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 223(d)(2). In this case, the ALJ found Plaintiff was not under a disability within the meaning of the Act during the period of April 18, 2003 through January 24, 2005. (Tr. at 14).

In reaching his conclusion, the ALJ adhered to the Administration's 5-step sequential analysis for evaluating applications for disability benefits. <u>See</u> 20 C.F.R. § 404.1520.[2]

---

[2]Five-step analysis includes: (1) ALJ considers whether claimant is currently engaged in substantial gainful activity; (2) if not, ALJ considers whether claimant has severe impairment which significantly limits his physical or mental ability to do basic work activities; (3) if claimant suffers such impairment, the third inquiry is whether, based solely on medical evidence, claimant has impairment which is listed in Appendix 1 of the Social Security Regulations, and if so, claimant will be considered disabled without considering vocational factors; (4) if claimant does not have a listed impairment, fourth inquiry is whether, despite claimant's severe impairment, he has residual functional capacity to perform his past work; and (5) if

Under Step 1 of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any time relevant to this decision. (Tr. at 15).

At Step 2, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease, fibromyalgia with multiple trigger points, mild left ventricle ("LV") systolic dysfunction, deep vein thrombosis ("DVT"), and sleep apnea. (Tr. at 16). The ALJ also found Plaintiff suffered from the non-severe impairment of depression. (Tr. at 16).

At Step 3 of the 5-step analysis, the ALJ concluded that Plaintiff's severe impairments did not meet or medically equal in severity the criteria listed in 20 C.F.R. 404, Subpart P, Appendix 1, §§ 1.00ff, 1.04, 3.00(H), 4.00ff, 4.08 and 4.11 of 20 C.F.R. 404, Subpart P, Appendix 1. (Hereinafter "the Listings"). (Listings 1.00 (Musculoskeletal System), 1.04 (Disorders of the Spine), 3.00(H) (Sleep-Related Breathing Disorders), 4.00 (Cardiovascular System), 4.08 (Cardiomyopathies), and 4.11 (Chronic Venous Insufficiency) (Tr. at 16).

In reaching this conclusion, the ALJ found the evidence in the record showed that Plaintiff's degenerative disc disease impairment did not result in significant ambulatory limitations, nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis causing pseudoclaudication (leg pain). (Tr. at 16). The evidence in the

---

claimant is unable to perform past work, ALJ determines whether claimant could perform other work. See id.

record also showed that Plaintiff's sleep apnea disorder did not impair cognitive function and was treatable with the continuous nocturnal administration of positive air pressure ("CPAP"). (Tr. at 17). However, Plaintiff stated that she didn't use the CPAP enough due to migraine headache pain. (Tr. at 291-92).

The evidence in the record from Plaintiff's most recent echo cardiogram showed "normal left ventricular systolic function with trace mitral insufficiency with otherwise normal Doppler flows." (Tr. at 18). The ALJ next found that the evidence in the record showed that anticoagulant medication controlled Plaintiff's DVT and Plaintiff's DVT condition was stable. (Tr. at 17, 18).

When an impairment does not exist in the Listings, the ALJ has the responsibility for determining whether the impairment medically equals a closely analogous listed impairment, based on all the evidence in the case record. 20 C.F.R. §§ 404.1526(b), 404.1526(e).

Fibromyalgia is not a listed impairment. The Second Circuit has stated that "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." Rivers v. Astrue, 280 Fed. Appx. 20, 22 (2d. Cir. 2008). In this case, the evidence in the record showed that Plaintiff's pain decreased with physical therapy and facet injections. (Tr. at 179-89). However, Dr. Siaw's Medical Source Statement explicitly stated that Plaintiff needed to rest lying down or in a supine position for a total cumulative time of 2 hours during an 8 hour work day due to pain. (Tr. at 162).

At Step 4, the ALJ found Plaintiff able to perform her past relevant work as a cashier and as a telerecruiter, based on Plaintiff's descriptions of these jobs and her residual functional capacity ("RFC"). (Tr. at 21). The ALJ found Plaintiff's RFC to include the ability to "lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. . . . [and] a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." (Tr. at 20). The ALJ stated that a claimant found to have the ability for light work is also able to perform sedentary work, unless additional factors exist to limit the claimant's abilities. (Tr. at 20).[3] The five-step analysis does not require the ALJ to continue on to Step 5 after making a finding that Plaintiff retains the RFC to perform her past work. 20 C.F.R. 404.1520.

### III. **The ALJ failed to properly consider Plaintiff's obesity.**

Plaintiff contends "the ALJ erred by not properly evaluating the claimant's obesity under Social Security Ruling 02-1p." (Plaintiff's Memorandum at 15). Defendant argues Plaintiff did not

---

[3] Plaintiff testified at her hearing that she was 5' 4" tall, and weighed 255 pounds, which was her "usual" weight. A revealing portion of her testimony is as follows:

Q. . . . now around the house, what are you able to do? What time are you able to get up in the morning? What do you do during the day?

A. I get up about 7:00, 7:30, get the kids ready for school and everything. And then we go outside and I usually take a chair, a chair with me, but now they moved the bus stop so I have a stoop I can sit on. I wait until they get on the bus, go back in the house. I try to do some dishes. I can't stand too long because my legs get weak and my back. I've got to lean like forward.."

(Tr. at 286.)

allege obesity, no diagnosis of obesity existed in record, and the ALJ properly addressed Plaintiff's obesity by noting that her physicians advised her to lose weight. (Defendant's Memorandum at 3).

However, it is clear from a review of the record that the ALJ was aware of the plaintiff's obesity based upon the medical reports of Dr. Siaw and Dr. Platt and the plaintiff's testimony at her hearing. The ALJ acknowledged that ". . . her physicians have recommended that she lose weight and exercise to improve her cardiac and sleep apnea conditions (citing two exhibits). There is no indication in the overall medical evidence of the claimant's compliance with these recommendations." (Tr. 19).

The regulations require that the ALJ must consider those impairments "about which [the ALJ] receive[s] evidence." 20 C.F.R. § 404.1512(a). If evidence of obesity exists in the record, at Step 2 of the five-step analysis the ALJ must determine if obesity is a severe impairment. Social Security Ruling ("SSR") 02-1p provides ". . . that [the Commissioner] considers obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." Introduction to SSR 02-1p: Policy Interpretation Ruling Titles II and SVI: Evaluation of Obesity, September 12, 2002. When obesity "significantly limits an

individual's physical or mental ability to do basic work activities," either in combination with other impairments or by itself, the ALJ must find the obesity to be a "severe" impairment. SSR 02-1p. If no evidence exists in the record of the limiting effects of claimant's obesity, the ALJ does not have to consider obesity at Steps 2 and 3. Rockwood v. Astrue, 614 F. Supp. 2d 252, 276 (N.D.N.Y. 2009).

At Step 3, the ALJ must consider whether the claimant's obesity medically equals a listing, either alone or in combination with other impairments. SSR 02-1p. Of particular relevance to this case, obesity "may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." Id. The ALJ must base his evaluation of the limitations caused by obesity on the evidence in the record. Id.

At Step 4, the ALJ should make an assessment of "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment" and explain how he reached his conclusions. SSR 02-1p. District courts vary in their interpretation of the extent and explicitness of the ALJ's required explanation. Rockwood v. Astrue,614 F.Supp. 2d at 277.

Finally, "[a] treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise is

not prescribed treatment." Id. Failure to comply with such advice does not mandate a denial of benefits. SSR 02-1p.

In this case, the evidence clearly indicates that Plaintiff suffered from obesity. Specifically, treating physician Dr. Siaw's Medical Source Statement, dated Aug. 15, 2003, explicitly stated "[t]his assessment is premised upon my diagnosis of . . . obesity." (Tr. at 165). Although giving no weight to the statement's finding which limited Plaintiff to sitting less than one hour in a work day, "in so far as it would preclude full-time work," the ALJ did not explicitly reject the listed diagnoses or the statement's finding that Plaintiff must rest at least two hours during an 8 hour work day due to pain. (Tr. at 18, 19, 162, 165).

In addition to the treating physician's statement, the objective medical evidence in the record supports a diagnosis of obesity by the treating physician. On Sept. 10, 2002, Dr. Siaw's treatment notes showed that Plaintiff weighed 260 lbs. and attending physician Dr. Platt reported to Dr. Siaw that Plaintiff's height was 5'4" on Oct. 16, 2002. (Tr. at 145, 148). Plaintiff's weight remained between 246 and 266 lbs. from Sept. 10, 2002 through the hearing on Nov. 15, 2004, at which Plaintiff testified that she was 5'4" and weighed 255 lbs. (Tr. at 90, 91, 93, 94, 96, 117, 118, 122, 123, 127, 129, 130, 131, 133, 134, 136, 138, 140, 144, 145, 148, 198, 203, 206, 216, 220, 225, 229, 235, 237, 240, 244, 247, 252, 255, 257, 286). In addition to the objective medical evidence of

Plaintiff's obesity, the ALJ observed Plaintiff at the oral hearing. (Tr. at 272).

The ALJ's decision does not mention obesity or explain his conclusions and findings regarding Plaintiff's obesity as required by SSR 02-1p. The ALJ's comment that Plaintiff had not complied with the treating physician's recommendation to lose weight is misplaced, as Plaintiff is only required to comply with prescribed treatment. (Id.)

The record contains evidence of the obvious limiting effects of Plaintiff's obesity. Specifically, treating physician Dr. Siaw's Aug. 15, 2003 Medical Source Statement, based on his diagnosis of Plaintiff's fibromyalgia, DVT, sleep apnea, obesity and cardiomyopathy, limited Plaintiff to sitting continuously for less than 15 minutes and cumulatively sitting less than one hour during an eight hour work day. (Tr. at 160). Dr. Siaw noted that Plaintiff could stand continuously for less than 15 minutes and could stand cumulatively less than one hour in an eight hour work day. (Tr. at 161).

Dr. Siaw also noted that Plaintiff would need to rest due to pain for a total cumulative time of two hours per day and limited her carrying to 5 lbs. occasionally and 50 lbs. rarely, stooping rarely, and limited reaching and pushing/pulling. (Tr. at 162, 163).

Therefore, because the record contains evidence of Plaintiff's obesity and its limiting effects, I find that the ALJ erred by failing to consider the impact of Plaintiff's obesity together with

her related impairments in determining the extent the combination of those impairments affects her ability to function at Steps 2-4.

At Step 4, the ALJ improperly failed to consider Plaintiff's obesity in formulating her RFC, failed to explain his conclusions, and failed to rely on treating physician Dr. Siaw's assessment of Plaintiff's physical limitations. (Tr. at 18-20).

Therefore, I find that the ALJ's determination that Plaintiff retains the RFC to return to past relevant work is not supported by substantial evidence.

## **CONCLUSION**

The ALJ failed to consider Plaintiff's obesity at Steps 2 - 4 of the five-step sequential evaluation analysis and failed to rely on Dr. Siaw's assessment of Plaintiff's physical limitations based on her obesity. Had the ALJ considered Plaintiff's obesity as required by SSR 02-1p and given proper weight to the treating physician's assessment of her physical limitations, the combination of their impairments supports of a finding that plaintiff is disabled. Therefore, this court finds that the Commissioner's decision denying Plaintiff's disability application was not supported by substantial evidence. The record contains substantial evidence of disability such that further evidentiary proceedings would serve no further purpose.

I therefore grant judgment on the pleadings in favor of Plaintiff and remand this matter to the Social Security

Administration for immediate payment of benefits. Defendant's motion for judgment on the pleadings is denied.

ALL OF THE ABOVE IS SO ORDERED.

                                    S/Michael A. Telesca
                            _____
                                 MICHAEL A. TELESCA
                             United States District Judge

Dated: Rochester, New York
       November 4, 2009